Dear Mr. LeBlanc:
You have requested an opinion of the Attorney General on whether the provisions of Act 1225 of the 2003 Regular Session (Act) provides that the proper method to calculate the savings attributed to the reduction of services and employees due to the closure of the Swanson Correctional Center for Youth-Madison Parish Unit (SCCY-MPU) Act is to deduct the costs of services and employees at the alternative correctional facility currently in operation from the costs of services and employees incurred when the facility was operated as a juvenile detention facility.
The Act provides for the enactment of LSA R.S. 15:902.2 which states, in part, that the Swanson Correctional Center for Youth — Madison Parish Unit will be closed as a juvenile detention facility on or before May 31, 2005. The Act also contains Section 7(A)(B) which provides as follows:
 Section 7.(A) Notwithstanding the provisions of Section 2 of the Act, for as long as the state is obligated for debt service on the Swanson Correctional Center for Youth-Madison Parish Unit (SCCY-MPU) facility at Tallulah, Louisiana, the state shall provide alternative uses for the facility as a correctional facility.
 (B) The executive budget submitted annually by the governor shall provide that savings attributed to the reduction of services and employees otherwise needed at SCCY-MPU but the transitioning of adjudicated juveniles pursuant to the provisions of Section 2 of this Act, shall be used as follows:
 To increase the availability of alternative programs for adjudicated juveniles being served in the parishes of East Carroll, West Carroll, Madison, Richland, and Tensas and for a community-based system of care for adjudicated juveniles residing in those parishes, through the funding of contract services programs in the amount of forty percent of the savings, not to exceed three million dollars, in order to offset the loss of services and jobs which would have otherwise been required to provide juvenile services at SCCY-MPU.
 To increase the availability of a community-based system of care for adjudicated juveniles in all other parishes through the funding of contract services programs in an amount equal to the balance of the savings.
The following rules of statutory interpretation and construction are applicable to the issue presented.
LSA-C.C. Art. 9. Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
LSA-C.C. Art. 10. Language susceptible of different meanings
 When the language of the law is susceptible of different meanings, it must be interpreted as having a meaning that best conforms to the purpose of the law.
LSA-C.C. Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
R.S. 1:3. Words and phrases; how construed
 Words and phrases shall be read with their context and according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
Regardless of whether the alternative correctional facility located at Tallulah, Louisiana retains the name of SCCY-MPU, or some other name, the Act clearly and unambiguously states that the savings to be distributed in Section 7(B) is based on the reduction of services and employees currently needed at the SCCY-MPU facility. The reduction contemplated by the statute can only be calculated by deducting the cost of services and employees that was expended at SCCY-MPU prior to its closure as a juvenile detention facility from the costs of services and employees that is expended at the alternative correctional facility that is in current operation. The fact that the correctional facility may now have another name is immaterial to this calculation. An interpretation that the savings calculation called for in Section 7(B) is not applicable because the facility is no longer operated as a juvenile correctional facility called SCCY-MPU would be inconsistent with LA. C.C. art. 9.
The Act clearly contemplates that the costs associated with providing services and employees to the new alternative correctional facility would be deducted from the costs of services and employees to the facility when it was operated as a juvenile detention facility. This calculation would result in the savings to be distributed pursuant to Section 7(B)(1)(2). The language in Section 7(B)(1) provides further evidence of such a interpretation by stating that the savings from the closure of SCCY-MPU are needed "in order to offset the loss of services and jobs which would have otherwise been required to provide juvenile services at SCCY-MPU." The alternative correctional facility that operates in place of SCCY-MPU certainly provides services and jobs, many of which are no doubt the same as or similar to the jobs and services previously provided to the juvenile detention facility. It is the net loss of jobs and services that the Act attempts to address.
Guided by the rules of statutory interpretation and construction noted above, we find the provisions of the Act and specifically Section 7(A)(B) to be clear and unambiguous and should be applied as written with no further interpretation. Assuming, arguendo, the provisions are ambiguous, we are required to examine the text of the law in its entirety. Our jurisprudence has consistently held that, in construing a statute, one is bound to consider all parts together, giving effect to all parts, if possible, and not construing as surplusage any sentence, clause or word, if the construction can be legitimately found which will give meaning to and preserve all words of the statute. Ritchie v. LouisianaDepartment of Public Safety and Corrections,595 So.2d 1158
(La.App. 1 Cir. 1991) writ denied.
After researching the legislative history of the Act relating to the closure of the SCCY-MPU, this office can find no evidence that the legislature intended to designate the entirety of the operational costs of SCCY-MPU prior to closure as savings without adjustment and reduction due to the operational costs of the alternative correctional facility current in operation. It is therefore the opinion of this office that the clear and unambiguous structure of Act 1225 of the 2003 Regular Session and, specifically Section 7(A)(B), provides that the savings attributed to the reduction of services and employees due to closure of SCCY-MPU must be calculated by deducting the cost of services and employees at the alternative correctional facility currently in operation from the cost of services and employees at the facility when previously used as a juvenile detention facility. This calculation must be made prior to a determination of what, if any, savings are subject to the disbursement requirements of Section 7(B)(1)(2).
We trust that this answers your inquiry.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _______________________________ RICHARD L. McGIMSEY Assistant Attorney General
CCF/RLM/dam